

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00438-CR

Lester Hidalgo **AGUILAR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court, Kinney County, Texas
Trial Court No. 10697CR
Honorable Roland Andrade, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:        Luz Elena D. Chapa, Justice
               Beth Watkins, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: June 14, 2023

AFFIRMED

Appellant Lester Hidalgo Aguilar challenges his criminal trespass conviction. We affirm the trial court's judgment.

### BACKGROUND

On September 13, 2021, officers from the United States Border Patrol and the Texas Department of Public Safety apprehended Aguilar on property the parties refer to as the Gabler Ranch. Aguilar was arrested and charged with criminal trespass. In the information, the State alleged Aguilar:

without authorization provided by any law and having notice that the entry was forbidden, intentionally and knowingly enter[ed] agricultural land of another, namely Gaebler [*sic*] Ranch, hereinafter styled the complainant, without the express consent of the complainant, and the defendant was on the agricultural land of another to a distance greater than 100 feet without the effective consent of the complainant.

After hearing the evidence, a Kinney County jury found Aguilar guilty as charged, and the trial court sentenced him to one year of confinement. Aguilar then filed this appeal.

ANALYSIS

In four issues we construe as three, Aguilar argues the evidence is legally insufficient to support findings that: (1) he entered or remained on the property of "another"; (2) he lacked effective consent to be on the property; and (3) the property was agricultural land.

***Standard of Review and Applicable Law***

When a defendant challenges the sufficiency of the evidence to support his conviction, we must affirm the conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020). In making this determination, we consider both the evidence presented at trial and "reasonable inferences therefrom." *Walker*, 594 S.W.3d at 335; *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (jury is permitted to draw reasonable inferences that are supported by the record). "Importantly, sufficiency review does not rest on how the jury was instructed. Instead, we review whether the evidence supports the elements of the charged crime. Those elements are defined by the hypothetically correct jury charge." *Walker*, 594 S.W.3d at 335–36 (footnotes omitted).

A person commits the offense of criminal trespass if he "enters or remains on or in property of another . . . without effective consent" and he "(1) had notice that the entry was forbidden; or

(2) received notice to depart but failed to do so." TEX. PENAL CODE ANN. § 30.05(a); *see Curlee v. State*, 620 S.W.3d 767, 782 (Tex. Crim. App. 2021) (identifying elements of criminal trespass). "'Effective consent' includes consent by a person legally authorized to act for the owner." TEX. PENAL CODE ANN. § 1.07(a)(19).

### *Application*

### *Property of Another*

As noted above, the State alleged that Aguilar "intentionally and knowingly enter[ed] agricultural land of another, namely Gaebler [*sic*] Ranch[.]" This allegation also appeared in the charge submitted to the jury. Aguilar argues the State did not prove he entered "property of another" because the Texas Penal Code defines "another" as "a person other than the actor" and the State did not present any evidence that "Gaebler Ranch" was a person. *See* TEX. PENAL CODE ANN. § 1.07(a)(5) (defining "another"); *id.* § 1.07(a)(38) (defining "person").

The Texas Court of Criminal Appeals has held that "ownership is *not* an element of criminal trespass." *Langston v. State*, 855 S.W.2d 718, 721 (Tex. Crim. App. 1993). The court has also held, however, that "if the State unnecessarily alleges ownership of the property, the State assumes the burden of proving that allegation." *Arnold v. State*, 867 S.W.2d 378, 379 (Tex. Crim. App. 1993); *Langston*, 855 S.W.2d at 721. Under *Arnold* and *Langston*, the allegations in the information and jury charge would have required the State to prove that "Gaebler Ranch" either owned the property or had a greater right to possession than Aguilar. *See Arnold*, 867 S.W.2d at 379; *Langston*, 855 S.W.2d at 721.

But as this court and other courts of appeals have noted, *Arnold* and *Langston* predate the Court of Criminal Appeals's adoption of the "hypothetically correct jury charge" standard for evaluating sufficiency of the evidence. *See In re J.V.*, No. 04-12-00707-CV, 2013 WL 2145779, at *2 (Tex. App.—San Antonio May 15, 2013, no pet.) (mem. op.); *Portis v. State*, Nos. 14-17-

00566-CR & 14-17-00567, 2018 WL 1720948, at *4–5 (Tex. App.—Houston [14th Dist.] Apr. 10, 2018, no pet.) (mem. op., not designated for publication); *Anthony v. State*, 209 S.W.3d 296, 309 n.11 (Tex. App.—Texarkana Nov. 30, 2006, no pet.). When *Arnold* and *Langston* were decided, "sufficiency of the evidence [was] measured by the [charging instrument] as incorporated into the jury charge." *See Malik v. State*, 953 S.W.2d 234, 235 (Tex. Crim. App. 1997). If the "charge [was] more favorable to the defendant than the law require[d] and if the State fail[ed] to object," the wording of the charge controlled the sufficiency analysis. *Id.* In *Malik*, however, the court rejected this standard and held:

> [S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.

*Id.* at 240; *see also Walker*, 594 S.W.3d at 336.

"[T]he hypothetically correct jury charge does not necessarily have to track exactly all of the charging instrument's allegations." *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018). "[W]hether an unproved allegation is to be included in the hypothetically correct jury instruction is determined by whether or not the variance between the allegation and proof is 'material.'" *Id.* at 546–47 (citing *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001)). The materiality of a variance turns on whether the charging instrument as written: (1) failed to "inform[] the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial"; and (2) subjected him to a risk of being prosecuted later for the same crime. *Gollihar*, 46 S.W.3d at 257–58.

Aguilar does not argue that the variance between the State's allegations and its proof is material.[1] *See id.* Moreover, this court's existing precedent compels us to conclude any variance here is not material. In *In re J.V.*, as in this case, the charging instrument alleged a specific owner of property involved in a criminal trespass matter. *In re J.V.*, 2013 WL 2145779, at *2. And, as in this case, the appellant in *In re J.V.* argued the evidence was legally insufficient because the State did not prove the person named in the charging instrument owned the property. *See id.* We rejected this argument and held that "because ownership is not an element of the offense of trespass, the State was not required to prove ownership." *Id.* We are bound by that holding. *See, e.g.*, *Medina v. State*, 411 S.W.3d 15, 20 n.5 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Accordingly, we must hold the State was not required to prove that "Gaebler Ranch" owned the property. *See In re J.V.*, 2013 WL 2145779, at *2.

Under a hypothetically correct jury charge, the State was required to prove Aguilar entered or remained on "property of another"—i.e., a person other than Aguilar. TEX. PENAL CODE § 30.05(a); TEX. PENAL CODE ANN. § 1.07(a)(5), (38); *Curlee*, 620 S.W.3d at 782. Aguilar concedes the evidence presented below showed that an individual named Kurt Gabler owned the property, and he does not dispute that Gabler was "another" as defined by statute. Because the jury heard evidence that the property belonged to Gabler, it could have rationally concluded Aguilar entered "property of another[.]" TEX. PENAL CODE § 30.05(a); *Jackson*, 443 U.S. at 319; *Walker*, 594 S.W.3d at 335–36.

We overrule Aguilar's first issue.

---

[1] In his reply brief, Aguilar notes that he does "not challenge the sufficiency of the charging instrument to provide notice" of the offense with which he was charged. *See Gollihar*, 46 S.W.3d at 257–58.

*Without Effective Consent*

In his second and third issues, Aguilar argues the State did not present any evidence that he entered or remained on the property "without effective consent" of the complainant, Gabler Ranch, or the landowner, Kurt Gabler. *See* TEX. PENAL CODE § 30.05(a).

Gabler did not testify at trial. But his sister, Cheryl Tomlin, did. Tomlin testified the Gabler Ranch consisted of 6,401 acres that she, Gabler, and their sister inherited from their father. While Tomlin agreed the three siblings each owned different tracts of the property, she testified that "what is called the Gabler Ranch" included the property on which Aguilar was apprehended. She further testified she was the caretaker for the entire Gabler Ranch and that she and her husband had lived on the property for twelve years. Tomlin explained that she "[took] care of" issues that arose on the property because she was "the one that lives out here." She noted, for example, that law enforcement officers call her when people are found on the property. She also testified that she had authority to grant or deny permission to enter the property and that Aguilar did not have her permission. Finally, she testified the entire property was surrounded by fencing "[t]o keep people out."

Aguilar argues the State's evidence that he lacked Tomlin's consent to enter the property is legally insufficient because he "was not found on [Tomlin's] land." In his reply brief, he contends the State must "prove that a living owner of property withheld his effective consent." This appears to be an argument that only a record title holder may withhold effective consent to enter or remain on the property. However, both the Texas Penal Code and the jury charge in this case define "owner" as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PENAL CODE ANN. § 1.07(a)(35)(A).

Based on this definition, our sister courts have affirmed criminal trespass convictions where the evidence showed a person other than the record title holder withheld consent to enter or remain on the property. For example, the Beaumont Court of Appeals concluded the State presented legally sufficient evidence of criminal trespass by demonstrating the defendant ignored a city manager's and a police officer's statements barring him from a community center. *See Wilson v. State*, 504 S.W.3d 337, 348 (Tex. App.—Beaumont 2016, pet. ref'd). Similarly, the Dallas Court of Appeals affirmed a criminal trespass conviction where the evidence showed "the elected chairman of" an Alcoholics Anonymous group ordered the defendant to leave a group meeting. *See Maxwell v. State*, No. 05-00-00118-CR, 2000 WL 1721661, at *3–4 (Tex. App.—Dallas 2000, no pet.) (mem. op., not designated for publication). Moreover, we noted in *In re J.V.* that: (1) the evidence showed the appellant was ordered to leave land surrounding a public school by a police officer assigned to that campus; and (2) the evidence was sufficient to show the police officer "had a greater right to possession of the property than" the appellant. *In re J.V.*, 2013 WL 2145779, at *3.

Based on Tomlin's testimony, the jury could have rationally found that Tomlin either had possession of the property or had a greater right to possession than Aguilar. *See* TEX. PENAL CODE § 1.07(a)(35)(A); *Wilson*, 504 S.W.3d at 348; *Maxwell*, 2000 WL 1721661, at *3–4. Because Tomlin testified Aguilar did not have her permission to enter the property, a rational jury could have found Aguilar lacked "effective consent" to enter or remain on the property. TEX. PENAL CODE § 30.05(a); *Jackson*, 443 U.S. at 319; *Walker*, 594 S.W.3d at 335–36.

We overrule Aguilar's second and third issues.

*Agricultural Land*

In his fourth issue, Aguilar notes the information and jury charge identified the property as "agricultural land," and he contends the evidence is legally insufficient to establish that the

complainant, Gabler Ranch, owned agricultural land. As explained above, we have previously held that an unnecessary allegation of ownership may be disregarded. *In re J.V.*, 2013 WL 2145779, at *2. For that reason, to the extent that Aguilar argues the evidence is insufficient because the State failed to prove Gabler Ranch owned agricultural land, we may not overturn his conviction on that ground.

To the extent Aguilar argues the State was required to prove the "agricultural land" allegation as an element of the offense, a rational factfinder could have concluded it met that burden here. Section 30.05 defines "agricultural land" as having "the meaning assigned by Section 75.001, Civil Practice and Remedies Code." TEX. PENAL CODE § 30.05(b)(5). Section 75.001 of the Texas Civil Practice and Remedies Code defines "agricultural land" as:

> land that is located in this state and that is suitable for: (A) use in production of plants and fruits grown for human or animal consumption, or plants grown for the production of fibers, floriculture, viticulture, horticulture, or planting seed; (B) forestry and the growing of trees for the purpose of rendering those trees into lumber, fiber, or other items used for industrial, commercial, or personal consumption; or (C) domestic or native farm or ranch animals kept for use or profit.

TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(1). Again, Tomlin testified that "what is called the Gabler Ranch" included the property on which Aguilar was apprehended. She testified that she used the Gabler Ranch to raise cattle and goats and that the fencing around the entire property was intended "[t]o keep the cattle in[.]" Based on this testimony, the jury could have rationally inferred that the land on which Aguilar was apprehended was "suitable for . . . domestic or native farm or ranch animals kept for use or profit." *See* TEX. PENAL CODE § 30.05(b)(5); TEX. CIV. PRAC. & REM. CODE § 75.001(1)(C); *Walker*, 594 S.W.3d at 335.

We overrule Aguilar's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH